UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Case No. 1:25CR15MSM-LDA |
| v. | Violations: |
| ELIJAH GAVIN a/k/a Timothy O'Reilly a/k/a Elijah Thomas | 18 U.S.C. § 1349 (Wire Fraud Conspiracy), 18 U.S.C. §§ 1343 & 2 (Wire Fraud), 18 U.S.C. § 1956 (Money Laundering), and associated forfeiture allegations |

## INDICTMENT

The Grand Jury charges that:

### Introduction

At all times relevant to this Indictment, unless herein stated:

1. Defendant ELIJAH GAVIN ("GAVIN") was a citizen of the United Kingdom unlawfully present in the United States.

2. Ground Force Masonry, CityWide Contractors Corp., Absolute Construction Contractors Corp., Legacy Roofing & Masonry, Ace Contractors Corp., Rhino Restoration Corp., and Diamond Ridge Construction Company were purported construction businesses, among others, used by GAVIN and other members of the conspiracy to defraud property owners.

3. GAVIN maintained bank accounts at various domestic and international banks, to include TD Bank Acct. # xxxx-xx-4688, held in the name of "Elijah M. Gavin."

4. GAVIN used multiple cell phones and cell phone numbers, including (781) 809-5887 and (617) 312-3984.

5. An individual using the alias "Simon Kelly" was an associate and co-conspirator of GAVIN.

6. An individual using the alias "Lewis Roth" was an associate and co-conspirator of GAVIN.

7. LC was a 78-year-old widow residing alone in Rhode Island. LC hired GAVIN and his co-conspirators to perform construction work on her personal residence.

8. JO, RC, RS, and BM were residents of New Jersey, New York, Pennsylvania, and Massachusetts who hired GAVIN and his co-conspirators to perform construction work on their properties.

## COUNT 1
(Wire Fraud Conspiracy)

9. The allegations of paragraphs 1 - 8 are realleged and incorporated herein as if set out in full herein.

### The Conspiracy

10. Beginning on or about October 4, 2022 and continuing until a date unknown, but at least as late as on or about January 29, 2025, in the District of Rhode Island and elsewhere, defendant ELIJAH GAVIN and others known and unknown to the Grand Jury did knowingly, willfully, and unlawfully combine, conspire, and agree with each other to commit wire fraud by devising a scheme to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and

promises from property owners through a construction fraud scheme, and for the purpose of executing such scheme, did cause to be transmitted by means of wire communication in interstate commerce signals and sounds, contrary to 18 U.S.C. § 1343.

### Purpose of the Conspiracy

11. The purpose of the conspiracy was for GAVIN and his co-conspirators to unlawfully obtain funds from property owners for construction work that was not needed or performed.

### Manner and Means of the Conspiracy

The manner and means by which the co-conspirators sought to accomplish and did accomplish the purpose of the conspiracy included, among others, the following:

12. It was part of the conspiracy that the co-conspirators formed and used multiple construction businesses as part of their construction fraud scheme.

13. It was further part of the conspiracy that the co-conspirators often used a straw man to organize these construction businesses and falsely represented the businesses' status, experience, and quality of work.

14. It was further part of the conspiracy that the co-conspirators falsely represented their identities and skills to homeowners.

15. It was further part of the conspiracy that the co-conspirators made false representations to property owners regarding the condition of the owners' properties.

16.  It was further part of the conspiracy that the co-conspirators made false representations to property owners regarding the construction work that the co-conspirators would perform.

17.  It was further part of the conspiracy that the co-conspirators made false representations to property owners regarding the machinery, materials, and equipment needed to perform the construction work on the owners' properties.

18.  It was further part of the conspiracy that the co-conspirators collected checks from the property owners for work that was not performed and equipment that was not needed or used.

19.  It was further part of the conspiracy that the co-conspirators deposited checks from the property owners into accounts controlled by the co-conspirators or transferred those checks to other individuals who then laundered the fraudulently obtained funds.

### Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy and to accomplish its purpose, at least one of the following overt acts, among others, was committed by one or more of the co-conspirators in the District of Rhode Island and elsewhere:

20.  On or about October 4, 2022, GAVIN entered the United States under false pretenses to engage in a construction fraud scheme.

21. In or about May 2023, GAVIN, who was using the name "Thomas" and the business name Ground Force Masonry, represented to JO that he would repair the wall and stairs of JO's personal residence located in Boston, MA.

22. On or about May 8, 2023, JO paid GAVIN $3,300, including one check that was made payable to "Elijah Gavin," for work that was not completed or was substandard resulting in damage to JO's residence.

23. On or about June 29, 2023, in the Bronx, NY, GAVIN, who was using the name "Elijah Thomas" and the business name CityWide Contractors Corp., presented RC with an estimate for construction work that he would perform on the exterior wall of RC's church located in the Bronx, NY.

24. Between on or about August 1, 2023, and on or about September 5, 2023, GAVIN collected checks made payable to "Elijah Gavin" totaling $61,000 from RC for work on the church that was not completed or was sub-standard. RC later had to hire another contractor to re-do the work.

25. On or about November 17, 2023, a co-conspirator using the name of "Simon Kelly" and the business name Legacy Roofing & Masonry told LC that the foundation of her home in Providence, RI needed repairs.

26. On or about November 17, 2023, "Simon Kelly" gave LC cell phone number (781) 809-5887 to use to communicate with him regarding the work performed on her home. Although "Simon Kelly" represented that this was his number, GAVIN was the real user of (781) 809-5887.

27. On or about November 17, 2023, GAVIN, who was using the name "Timothy O'Reilly," represented to LC that he was "Simon Kelly's" supervisor.

28. Between on or about November 21, 2023, and on or about November 27, 2023, GAVIN obtained two checks from LC, made payable to "Elijah Gavin mgr + director" and "Elijah Gavin" for construction work that was not performed or was sub-standard. GAVIN deposited these checks into TD Bank Acct. # xxxx-xx-4688.

29. On or about November 29, 2023, the co-conspirators collected two checks from LC made payable to Unikeen STP in the amounts of $50,000 and $135,000 for construction work that was not performed or was sub-standard.

30. On or about December 7, 2023, "Simon Kelly" falsely represented to LC that the foundation of her house required specialized heavy equipment from New York for repair. LC paid "Simon Kelly" with a check made payable to ADDS Master, Inc. in the amount of $450,000. This check was returned for insufficient funds.

31. Between on or about December 7, 2023, and on or about December 15, 2023, three additional checks were issued by LC for the equipment purportedly needed to repair her home. One of these checks was made payable to Unikeen STP in the amount of $175,000 and two were made payable to ADDS Master, Inc. in the amounts of $350,000 and $100,000. The equipment was not needed and never arrived.

32. Between on or about December 12, 2023, and on or about January 11, 2024, LC exchanged numerous calls and text messages, including the interstate call described in paragraph 41, with whom she believed to be "Simon Kelly." During these

communications, LC and "Simon Kelly" discussed the construction project and the equipment that "Kelly" said would arrive to her home, but never did.

33. In or about January 2024, "Simon Kelly" falsely represented to LC that her roof needed repairs and that these repairs would cost $25,000.

34. On or about January 8, 2024, LC, who was in Rhode Island, received a text message from (781) 809-5887 with wire instructions for the payment of $25,000.

35. On or about April 18, 2024, GAVIN, who was using cell phone number (617) 312-3984 in Massachusetts at the time, called LC, who was in Rhode Island, twice. During these calls, GAVIN, who used the name "Ian Walsh," offered LC a refund in the amount of $850,000 for the shoddy work performed on her residence. "Ian Walsh" falsely represented to LC that he had a $950,000 check for her that he would deliver to her if she were to issue him a check in the amount of $100,000.

36. On or about January 29, 2025, BM gave the co-conspirators two checks made payable to MJR each in the amount of $35,000 for a special truck that they falsely stated was needed for construction work on her home. These checks were recovered from GAVIN's truck later that day along with business cards in the name of Rhino Restoration Corp.

37. On or about January 30, 2025, in a Massachusetts hotel room used by GAVIN, he possessed a handwritten note with the name, social security number, address, and email address of RS and the figure "$100,000" written on the note.

All in violation of 18 U.S.C. § 1349.

## COUNT 2
(Wire Fraud)

38. The allegations contained in paragraphs 1 through 37 of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

39. From on or about a date unknown, but at least as early as March 4, 2023, to on or about a date unknown, but at least as late as January 30, 2025, defendant ELIJAH GAVIN and others devised and intended to devise a scheme to defraud property owners, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

40. The Manner and Means of GAVIN's scheme to defraud are substantially the same as the Manner and Means of the Conspiracy described in paragraphs 12 through 19 of this Indictment.

41. On or about January 2, 2024, in the District of Rhode Island and elsewhere, defendant ELIJAH GAVIN, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce signals and sounds, namely, a cell phone call from New York to LC in Rhode Island to discuss the construction project at LC's home.

All in violation of 18 U.S.C. §§ 1343 and 2.

## COUNT 3
(Money Laundering)

42. The allegations contained in paragraphs 1 through 41 of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

43.     On or about December 7, 2023, in the District of Rhode Island, defendant ELIJAH GAVIN did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, two withdrawals of $10,000 each from two different TD Bank locations in Rhode Island, which involved the proceeds of a specified unlawful activity, that is wire fraud, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under federal law and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of 18 U.S.C. § 1956(a)(1)(B)(ii).

## FORFEITURE ALLEGATIONS

44.     The allegations above are realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) as well as 18 U.S.C. §§ 982(a)(1) and (a)(2)(A).

45.     Upon conviction of offenses in 18 U.S.C. §§ 1349 and 1343 as set forth in Counts 1 and 2 of this Indictment, defendant ELIJAH GAVIN shall forfeit to the United States under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) as well as 18 U.S.C. § 982(a)(2)(A) any property, real or personal, that constitute or is derived, directly or indirectly, from proceeds traceable to the commission of the offense.  The property to be forfeited includes, but is not limited to, $4,885.47 seized from GAVIN at the time of his arrest.

46.     The United States will also seek a forfeiture money judgment against GAVIN in the amount equal to the proceeds of his offenses as set forth in Counts 1 and 2.

47.     Upon conviction of an offense in violation of 18 U.S.C. § 1956 as set forth in Count 3, defendant ELIJAH GAVIN shall forfeit to the United States of America under 18 U.S.C. § 981(a)(1)(A), 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c) as well as 18 U.S.C. § 982(a)(1) any property, real or personal, involved in such offense; constituting or derived, directly or indirectly, from proceeds traceable to such offense; and any property traceable to such property.

48.     The United States will also seek a forfeiture money judgment against

10

GAVIN in the amount equal to the property involved or constituting proceeds of his offense as set forth in Count 3.

49. If any of the property described above, as a result of any act or omissions of GAVIN, (a) cannot be located upon the exercise of due diligence, (b) has been transferred or sold to, or deposited with, a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property under 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) as well as 18 U.S.C. § 982(a)(2)(A)

Grand Jury Foreperson

SARA M. BLOOM
ACTING UNITED STATES ATTORNEY

SANDRA R. HEBERT
Assistant U.S. Attorney

LEE H. VILKER
Criminal Division Chief

Date: 2/26/2025